IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 7, 2007

Charles R. Fulbruge III
Clerk

No. 06-60569

RAJU RAJ GIRI, SUSMITA GIRI, RIWAJ GIRI,

Petitioners,

v.

PETER D. KEISLER, ACTING U.S. ATTORNEY GENERAL,

Respondent,

Petition for Review of an Order of the
Board of Immigration Appeals

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:

Raju Raj Giri, along with his wife and their child, seeks review of an order
of the Board of Immigration Appeals (BIA) dismissing their appeal from the
immigration judge's decision to deny their application for asylum, withholding
of removal, and relief under the Convention Against Torture (CAT). Pursuant
to the fugitive disentitlement doctrine, which we find applicable in this
immigration proceeding, the petition for review is DISMISSED.

I. BACKGROUND

The Giris, who are natives and citizens of Nepal, entered the United States
through California on or about July 4, 2003, as non-immigrant visitors with
authorization to remain in this country for a temporary period not to exceed

January 2, 2004. After overstaying their visas, the Giris were issued notices on February 5, 2004, to appear in immigration court for deportation proceedings. At an immigration court hearing on April 5, 2004, the Giris conceded removability, and then applied for asylum, withholding of removal, and protection under the CAT. After a hearing on the merits on September 15, 2004, the immigration judge rendered an oral decision on March 15, 2005, denying the Giris' claims for relief and ordering them removed to Nepal. On June 7, 2006, the BIA affirmed the immigration judge's decision. The Giris then filed a petition for review of the BIA's decision with this court.

During the pendency of the Giris' petition, the United States Immigration and Customs Enforcement (ICE) denied their application for a stay of deportation or removal on October 24, 2006, resulting in their removal orders becoming administratively final. The Giris subsequently failed to report, as required, to ICE with an unexpired passport and a one-way ticket to Nepal. Acknowledging that ICE considered the Giris to be in "fugitive status" at that point, they filed a motion for stay of removal with this court on February 17, 2007, which was ultimately denied. In a letter dated February 28, 2007, the United States Department of Justice stated that the Giris are "currently not in custody" and are "currently absconder fugitives." On March 9, 2007, the Government filed a motion to dismiss the Giris' petition for review based on the fugitive disentitlement doctrine, contending that the Giris had failed to comply with various ICE orders and to cooperate with ICE personnel. To this day, the Giris have not reported for removal.

## II. ANALYSIS

The question presented in this appeal is whether the fugitive disentitlement doctrine may be invoked to dismiss a petition for review of a BIA decision by a fugitive alien. This is an issue of first impression in this circuit.

In another context, we have observed that "the fugitive disentitlement doctrine limits a criminal defendant's access to the judicial system whose authority he evades." Bagwell v. Dretke, 376 F.3d 408, 410 (5th Cir. 2004). As the Bagwell court explained:

> The Supreme Court first recognized the doctrine over 100 years ago, and the doctrine has since been used by both district and appellate courts to enter judgment against a fugitive defendant or to dismiss the defendant's appeal. This power stems not from any statute, but rather from a court's inherent power "to protect [its] proceedings and judgments in the course of discharging [its] traditional responsibilities."

Id. (alterations in original) (footnotes omitted) (quoting Degen v. United States, 517 U.S. 820, 823 (1996)); see also United States v. Delagarza-Villarreal, 141 F.3d 133, 136 (5th Cir. 1997) ("It is generally accepted that circuit courts have the authority to fashion procedural rules governing the management of litigation before them."). We have summarized the Supreme Court's justifications for use of the fugitive disentitlement as follows:

> First, if a defendant is a fugitive when the court considers his case, it may be impossible for the court to enforce any judgment that it renders. Second, courts have advanced a waiver or abandonment theory: by fleeing custody, the defendant is thought to have waived or abandoned his right to an appeal. Third, allowing a court to dismiss a fugitive's case is thought to "discourage[] the felony of escape and encourage[] voluntary surrenders." Fourth, because a litigant's escape impedes the ability of a court to adjudicate the proceedings before it, dismissal of the case furthers the court's "interest in efficient practice." Finally, the criminal defendant's escape is thought to represent an affront to the dignity and authority of the court.

376 F.3d at 411 (alterations in original) (internal quotation marks and footnotes omitted).

With these rationales in mind, we now find it proper to extend the fugitive disentitlement doctrine to the immigration context where, as here, the petitioners are fugitive aliens who have evaded custody and failed to comply

with a removal order. In so holding, we join with every other circuit that has addressed whether the fugitive disentitlement doctrine applies to appeals from the BIA under similar facts. See Gao v. Gonzales, 481 F.3d 173 (2d Cir. 2007) (affirming precedent established in Bar-Levy v. INS, 990 F.2d 33 (2d Cir. 1993)); Garcia-Flores v. Gonzales, 477 F.3d 439 (6th Cir. 2007); Sapoundjiev v. Ashcroft, 376 F.3d 727 (7th Cir. 2004); Antonio-Martinez v. INS, 317 F.3d 1089 (9th Cir. 2003); Arana v. INS, 673 F.2d 75 (3d Cir. 1982). The Seventh Circuit's reasoning is particularly persuasive in light of the justifications advanced by the Supreme Court to support use of the doctrine in other contexts:

> Litigation entails reciprocal obligations: an appellant (or petitioner) who demands that the United States respect a favorable outcome must ensure that an adverse decision also can be carried out. When an alien fails to report for custody, this sets up the situation that Antonio-Martinez called "heads I win, tails you'll never find me." A litigant whose disappearance makes an adverse judgment difficult if not impossible to enforce cannot expect favorable action. . . . Someone who cannot be bound by a loss has warped the outcome in a way prejudicial to the other side; the best solution is to dismiss the proceeding. That proposition is as applicable to the fugitive alien as it is to the fugitive criminal defendant . . . .

Sapoundjiev, 376 F.3d at 728-29 (internal citations omitted) (quoting Antonio-Martinez, 317 F.3d at 1093). We also agree with the Ninth Circuit that applying the fugitive disentitlement doctrine to certain immigration cases "furthers its punitive and deterrent purposes." Antonio-Martinez, 317 F.3d at 1093. As the Ninth Circuit explained: "Those who disregard their legal and common-sense obligation to stay in touch while their lawyers appeal an outstanding deportation order should be sanctioned. The prospect of disentitlement provides a strong incentive to maintain contact with the INS and counsel, rather than taking one's continued presence in the country for granted." Id.

Here, it is uncontested that the Giris have become fugitives since they filed their petition for review with this court. Consequently, they now wish to invoke the protection that a favorable decision from this court would provide, without submitting themselves to the risk of an adverse ruling. While it is certainly possible that the Giris may eventually decide to comply with their removal order following an adverse ruling in this matter, there is no indication that they will do so, and thus any decision on the merits, unless it is to petitioners' liking, may have no practical effect whatsoever. It is, as the Ninth Circuit suggests, akin to a game of "heads I win, tails you'll never find me." Id. We can find no reason to indulge such conduct, and therefore conclude that the fugitive disentitlement doctrine serves to bar further review of the BIA's decision.

## III. CONCLUSION

For the foregoing reasons, the Giris' petition for review is DISMISSED.